TROUNSTINE & COMPANY *v.* IRVING.

1. Where credit was extended upon the faith of a representation by the debtor made about six months prior to the dealings between himself and the creditor, in a written statement of his assets and liabilities to an agency engaged in furnishing to subscribers reports as to the financial standing of persons in business, and furnished by this agency to the creditor at the time the credit was extended, which representation was to the effect that the debtor had in his own name town property of a certain aggregate value, and this included the value of a certain house and lot of which, two years before, he had made a parol gift to his son, who had ever since been in possession, and to which, after

the representation was made and before the credit was extended, he made a deed of gift to the son, the donor being then solvent and not thereby rendered insolvent, the conveyance, in the absence of fraud, was not void as between the donee and the creditor, although not recorded until after the creation of the debt.

2. The evidence being undisputed that the donee was in possession of the property at the time the credit was extended to the donor, the court did not err in refusing to charge that if the credit was extended on the faith of the property, without notice of the deed, the conveyance was void as between the creditor and the donee.

3. A request to charge that if the deed was withheld from record and concealed from the creditor, this might be, "under all the evidence," sufficient to render it void if the goods were sold on the faith of the property conveyed, was properly refused; the charge requested was liable to be construed as an expression of opinion upon the evidence.

4. The evidence warranted the verdict.          *Judgment affirmed.*
November 21, 1892.

Before Judge RONEY.     McDuffie superior court. March term, 1892.

An execution in favor of Trounstine & Company against B. F. Irving, issued upon a judgment of September 17, 1889, was levied upon a lot of land in Thomson, which was claimed by G. H. Irving, son of the defendant.     The verdict was for the claimant. Plaintiffs moved for a new trial; the motion was overruled, and they excepted.

It appeared from the evidence that the claimant relied upon a deed from his father to him, dated May 2, 1888, marked filed for record December 13, 1888, and recorded March 2, 1889; that the goods for the price of which plaintiffs obtained judgment, were ordered from them by defendant on June 21, 1888; that when plaintiffs received the order for the goods, they applied to the mercantile agency of R. G. Dun & Company (to which they were regular subscribers) for a report of the financial standing of defendant, and received a copy of the report made by him, stating, among other things, that he had town property in his own name worth

$15,000, and a surplus in business of $18,350; believing in which statements they gave him the credit, and but for the item of $15,000 real estate they would not have sold defendant the goods. There was testimony that this statement was made by defendant on December 19, 1887. A deed of assignment was made by defendant on December 17, 1888, conveying all his property for the benefit of his creditors, in which there were claims preferred to the amount of $5,665.59, and his liabilities were stated at $13,050.70. He made a voluntary deed to a daughter, conveying a house and lot in Thomson, dated May 2, 1888; another to another daughter, conveying another house and lot in Thomson, of the same date; and another to his wife, conveying another house and lot in Thomson, dated December 10, 1888. The first two of these deeds were marked filed for record December 13, 1888, and recorded March 2, 1889, and the last filed for record December 14, 1888, and recorded January 4, 1889. The county tax digest for 1887 showed that defendant returned $7,000 town property, and claimant one poll and $35 household property. The tax digest for 1888 showed that claimant returned one poll and $183 household furniture, and that defendant returned $6,000 town property and $3,050 other property. Defendant's tax for 1888 was $91.50, of which $45 was paid by the assignee and the balance by defendant, claimant and the daughters above mentioned. When the three deeds to his children were drawn, neither of them was present, and after they were signed the person who drew them gave them to defendant and did not know what defendant did with them. They were all brought to the clerk for record by one person on December 13, 1888; and the witness who testified to this also testified that, to the best of his recollection, defendant brought them to him.

The defendant testified that he put claimant in pos-

session of the house and lot levied on, in 1886; that he was solvent at the time he made the deed to claimant, being then worth more than $10,000 above his liabilities. In this estimate his books and notes were valued at $8,294.78. A great many of the notes and accounts were not collected. 1888 was a very bad crop year; everything was swept away by the excessive rains, and the farmers could not pay their accounts. This was the cause of his trouble. When he made the deeds he never thought of having any financial trouble. All the property he turned over to his assignee only brought enough to pay the preferred debts under the deed. When the deeds were signed he took them and delivered "this" one to claimant and the others to his daughters; they may have remained in his safe, but if so, were put there by his children for safe-keeping, but he did not claim possession of them. He did not know how the three deeds came to be carried to the court-house together on December 13, 1888. He may have made the statement to Dun & Company, and the house and lot deeded to claimant may have been included in the item of $15,000 of town property. He never made any statement to Dun & Company or any one else, that he had made these deeds to his children. Claimant was his bookkeeper and clerk and had use of his safe to keep his papers in. The house and lot deeded to one of his daughters was given to her when she married, over seven years before he gave her the deed, and she had been in possession all the time, claiming it as her own, and made a great many valuable improvements on the lot, putting most of the buildings now on it. She paid him no rent, and he claimed no dominion over it. The house and lot deeded to his other daughter was given to her several years before the deed was given to her, and she had been in possession of the same. Claimant testified that he went into possession of the house and

lot in question, in 1886; that he was then clerking for his father; that the deed was given to him by his father about the time it bore date, and he thought he deposited it in the safe and kept it until he had it recorded; did not keep it off record with any intention to defraud any one, but neglected to record it, not thinking it necessary to be in any hurry about it, etc.

The motion for new trial alleges that the court erred in charging thus: " Something has been said about *bona fide* creditors. Now one who gives credit upon the faith of particular property is a *bona fide* creditor; but where credit is given upon property generally, without any particular description of the same, will not in law constitute one who sells goods to another a *bona fide* creditor. To constitute a *bona fide* creditor credit must have been given on the faith of specific property; for instance, if I own a dwelling-house and state to any one that I own this specific property, and he sells me goods on the faith of it, he is a *bona fide* creditor, and I give away the property but the deed was not recorded, then the property would be subject to the debt. But if the goods are sold upon faith of specific property without notice of the voluntary deed, and the party has other property ample to meet his debts, with which to pay the debts, then the deed is good. So the whole question comes back to this: was D. F. Irving solvent or not at the time he made the deed." The objection made in the motion is to the last qualification in this charge. The motion further assigns error in the court's refusal to charge as stated substantially in the second and third head-notes; and alleges that the verdict was contrary to law and evidence.

P. B. JOHNSON, for plaintiffs.

JOHN T. WEST, *contra.*